IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHAUNDALE J. JOHNSON,
Petitioner,

v.

Case No. 18–CV–02111–JPG

UNITED STATES OF AMERICA,
Respondent.

## MEMORANDUM & ORDER

## I.    INTRODUCTION

This is a proceeding for postconviction relief under 28 U.S.C. § 2255. Before the Court is

Petitioner Shaundale J. Johnson's Motion to Vacate, Set Aside, or Correct Sentence. The

Government responded. Because Johnson's trial counsel provided effective assistance, his Motion

is **DENIED**. The Court **DECLINES** to issue a certificate of appealability.

## II.    PROCEDURAL & FACTUAL HISTORY

In 2017, Johnson appeared before this Court and pleaded guilty to two counts of

distributing methamphetamine. (Min. Entry at 1, Crim. R.,[1] ECF No. 21; Indictment at 1–2, Crim.

R., ECF No. 1). Before sentencing, the Court considered a Presentence Investigation Report

("PSR") prepared by the United States Probation Office. The PSR stated that Johnson was

previously convicted of three controlled-substance offenses. (PSR at 6, Crim. R., ECF No. 22).

The first was a 2000 Missouri conviction for "Delivery of a Controlled Substance." (Id. at 6, 9).

The second was a 2003 Missouri conviction for "Distribution of a Controlled Substance." (Id. at 6,

10). And the third was a 2009 federal conviction for "Conspiracy to Distribute Five Grams or More

of Cocaine Base." (Id. at 6, 12). The PSR therefore suggested that Johnson was a "career offender"

---

[1] "Crim. R." refers to record documents in Johnson's criminal case, United States v. Johnson, No. 17–CR–40031–
JPG–1 (S.D. Ill. May 16, 2017). "Civ. R." refers to record documents in this case.

as defined by the United States Sentencing Guidelines Manual ("Sentencing Guidelines"), warranting an enhanced sentence.

Several times before sentencing, Johnson's trial counsel informed him why she thought the Court would classify him as a career offender. (Day Aff. at 7–9, Civ. R., ECF No. 13–3). Before the guilty plea, for example, Johnson's trial counsel sent him two letters suggesting that his three previous drug convictions were controlled-substance offenses that trigger the career-offender enhancement. (Id. at 7–8). And after the guilty plea, his trial counsel sent him another letter with more information about the enhancement and how it applied to his case. (Id. at 8–9). Still, his trial counsel filed a sentencing memorandum that "dealt with [Johnson's] argument that the career offender enhancement, while applicable, was overly harsh in this instance." (Id. at 9; see Sentencing Mem. 11–15, Crim. R., ECF No. 24).

At sentencing, the Court adopted the PSR in its entirety and sentenced Johnson as a career offender. (Statement of Reasons at 1, Crim R., ECF No. 31). The next day, Johnson informed his trial counsel that he wanted to appeal the sentence. (Day Aff. at 3). His trial counsel sent him a letter two days later stating that "[i]f there are no viable issues, an Anders brief explaining why there are no viable appealable issues will be filed." (Id.).[2] Then, through his trial counsel, Johnson filed a Notice of Appeal with the United States Court of Appeals for the Seventh Circuit. (Notice of Appeal at 1, Crim. R., ECF No. 32).

Johnson's trial counsel met with him in person, and Johnson told her that he wanted to raise two issues on appeal: (1) whether the Court fairly considered the sentence imposed; and (2) whether the Fifth Amendment's Double Jeopardy Clause prohibited the Court from using the same

---

[2]  In Anders v. California, 386 U.S. 738, 744 (1967), the Supreme Court authorized trial counsel to withdraw from representing a criminal defendant on appeal by filing a brief identifying the grounds that she might have raised on appeal and explaining why they are frivolous.

prior convictions for multiple sentencing enhancements. (Day Aff. at 3). A week later, Johnson's trial counsel sent him a letter explaining why she did not believe those were meritorious arguments. (Id.). The letter detailed the applicable law for both issues in simple terms, applied it to Johnson's case, and concluded that neither argument could be made in good faith. (Id. at 3–7). His trial counsel then filed an Anders brief with the Seventh Circuit and moved to withdraw. (Id. at 7).

The Seventh Circuit notified Johnson that an Anders brief was filed and gave him 30 days "to present any argument that you believe shows that your conviction is invalid." (Notice at 1, Crim. R., ECF No. 46). The court also clarified that Johnson was not entitled to another attorney to assist him in responding to the Anders brief and that the failure to respond may lead to dismissal. (Id. at 2). But rather than responding, Johnson asked the Seventh Circuit to appoint him a new attorney to pursue an ineffective-assistance-of-counsel claim against his trial counsel. (Order at 1, Crim R., ECF No. 51–1). The court dismissed Johnson's appeal, noting that his trial counsel's Anders brief "appears thorough" and that his ineffective-assistance claim was "best presented to the district court in a petition for collateral review so that a more thorough record can be developed." (Id. at 3).

In 2018, Johnson moved for relief under 28 U.S.C. § 2255. He presents two grounds for relief: (1) ineffective assistance of counsel; and (2) misclassification as a career offender. (Pet'r's Mem. at 3, 14, Civ. R., ECF No. 1). The Government responded. (Gov't's Resp. at 1, Civ. R., ECF No. 14).

III.    LAW & ANALYSIS

Johnson's stand-alone Sentencing Guidelines claim was procedurally defaulted, as challenges to a career-offender classification are not cognizable on collateral attack. What's more,

his ineffective-assistance-of-counsel claims lack merit. His trial counsel's performance was objectively reasonable at the district-court level and on appeal.

### A.  Johnson's Sentencing Guidelines Claim Was Procedurally Defaulted

Federal prisoners may challenge their detention "upon the ground that the sentence was imposed in violation of the Constitution . . . ." 28 U.S.C. § 2255. "Post-conviction relief is appropriate only for 'an error of law this is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice.' " Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quoting Borre v. United States, 940, F.2d 215, 217 (7th Cir. 1991)).

"[A] section 2255 motion is neither a recapitulation of nor a substitute for a direct appeal." Belford v. United States, 975 F.2d 310, 313 (7th Cir. 1992). A petitioner may therefore procedurally default a claim by failing to raise it on appeal. See Bousley v. United States, 523 U.S. 614, 622 (1998). And a procedurally defaulted claim may be raised on collateral attack only if the petitioner "can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.' " Id. (internal citations omitted).

An exception to the procedural-default rule arises where the "failure to consider the issue would amount to a fundamental miscarriage of justice." Fountain v. United States, 211 F.3d 429, 433 (7th Cir. 2000). Ineffective-assistance-of-counsel claims "fit into this mold." Id.; see United States v. Davenport, 986 F.2d 1047, 1050 (7th Cir. 1993) ("[A] defendant who presents an ineffective-assistance claim for the first time on direct appeal has little to gain and everything to lose."). And in Massaro v. United States, 538 U.S. 500, 504 (2003), the Supreme Court held that ineffective-assistance-of-counsel claims "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."

The Court agrees with the Government that Johnson's "nonconstitutional, nonjurisdictional, run-of-the-mill" Sentencing Guidelines claim was procedurally defaulted. United States v. Perales, 212 F.3d 1110, 1112 (8th Cir. 2000). In Hawkins v. United States, the Seventh Circuit clarified that a § 2255 motion cannot be used to vindicate nonconstitutional challenges to advisory Sentencing Guidelines calculations. 706 F.3d 820, 824–25 (7th Cir. 2013) (finding that even though the district court erroneously classified the petitioner as a career offender, "[t]he error could not be corrected in a postconviction proceeding"). Every other court of appeals to consider the issue has found the same. E.g., Snider v. United States, 908 F.3d 183, 191–92 (6th Cir. 2018); United States v. Foote, 784 F.3d 931, 939 (4th Cir. 2015); Spencer v. United States, 773 F.3d 1132, 1144 (11th Cir. 2014).

That said, Johnson can still raise the issue by asserting that his trial counsel's failure to make the Sentencing Guidelines argument at sentencing or on direct appeal constituted ineffective assistance. See Bullard v. United States, 937 F.3d 653, 660–61 (6th Cir. 2019) (finding petitioner's Sentencing Guidelines claim procedurally defaulted, but not his stand-alone ineffective-assistance claim) (citing Hawkins, 706 F.3d at 824); e.g., Jennings v. United States, 461 F. Supp. 2d 818, 829–30 (S.D. Ill. 2006). Since Johnson also frames his Sentencing Guidelines claim as an ineffective-assistance-of-counsel claim, the Court will address it as such with his other ineffective-assistance claims.

### B.  The Performance of Johnson's Trial Counsel Was Objectively Reasonable

The Sixth Amendment guarantees to each criminal defendant "the Assistance of Counsel for his defence." In Strickland v. Washington, 466 U.S. 668, 687 (1984), the United States Supreme Court determined that "the proper standard for attorney performance is that of reasonably

effective assistance." Thus, a criminal defendant's Sixth Amendment right is violated when his trial counsel renders *ineffective* assistance. Id.

To make out a successful ineffective-assistance-of-counsel claim, the petitioner must prove both of the following: (1) his trial counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. Id. But "[b]ecause of the difficulties inherent in making the evaluation," there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The petitioner therefore carries a heavy burden to "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

"The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. In general, "[b]efore significant decision-points, and at other times if requested, defense counsel should advise the client with candor concerning all aspects of the case, including an assessment of possible strategies and likely as well as possible outcomes." ABA Standards for Criminal Justice 4–5.1(a) (4th ed. 2017). This requires defense counsel to "investigate and be knowledgeable about sentencing procedures, law, and alternatives, collateral consequences and likely outcomes, and the practices of the sentencing judge, and advise the client on these topics . . . ." Id. at 4–6.3(e). And on appeal, "[d]efense counsel should provide the client with counsel's professional judgment as to whether there are meritorious grounds for appeal . . . ." Id. at 4–9.1(a). This also requires taking "whatever steps are necessary to protect the client's rights of appeal, including filing a timely notice of appeal in the trial court,

even if counsel does not expect to continue as counsel on appeal." Id. at 4–9.1(c). "When counsel cannot continue without misleading the court, counsel may request permission to withdraw." Id. at 4–9.2(f). In the end, evaluating an attorney's performance requires examining the totality of the circumstances. Strickland, 466 U.S. at 688.

Johnson argues that his trial counsel was ineffective in three ways. First, he argues that his trial counsel "was ineffective at the appellant stage by failing to perfect an appeal from the Judgment and sentence, as [he] had requested her to do." (Pet'r's Mem. at 16). At bottom, Johnson relied on his trial counsel to raise any argument on appeal that he wanted, but she filed an Anders brief and moved to withdraw. Second, Johnson argues that his trial counsel's Anders brief was "facially inadequate" because the "issues were monotonously presented as a way to appear to go through the formalities . . . ." (Id. at 7). Third, he argues that his trial counsel's performance was objectively unreasonable because her Anders brief did not address his Sentencing Guidelines claim. (Id. at 8). He contends that the Court misclassified him as a career offender and that his trial counsel erred by not raising the issue at the district-court level or on direct appeal. Finally, Johnson argues that his trial counsel's performance was objectively unreasonable because she did not make a Fifth Amendment challenge against the two-count Indictment. (Id. at 13–14). He contends that the Indictment violated the Double Jeopardy Clause because he each count was brought under the same statute.

Johnson's first argument—that his trial counsel was compelled to represent him on appeal and challenge his sentence—goes against established Supreme Court precedent. In Anders itself, the Court held that "if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw." 386 U.S. at 744. In other words, Johnson's trial counsel did not have to represent him on appeal when she

determined that, in her professional judgment, the issues that he wanted to present were frivolous. Rather, she did what was needed to protect her client's right to appeal, then withdrew. Indeed, lawyers have an *ethical* obligation not to raise frivolous arguments. She also adequately communicated her concerns to him—she met with him after sentencing, discussed the issues that he wanted to appeal, and later sent him a thorough and forthright letter explaining the law in clear terms and applying it to his case. Johnson was not blindsided by her objectively reasonable decision to withdraw.

As to his second argument, that his trial counsel's Anders brief was facially inadequate, Johnson suggests that he is similarly situated to the petitioner in United States v. Wagner, 103 F.3d 551, 553 (7th Cir. 1996). In Wagner, the petitioner's trial counsel submitted a 22-page, well-written Anders brief and moved to withdraw. Id. The petitioner did not respond, and the appellate court had to determine "how deeply . . . appellate judges must explore the record in the district court in order to determine whether to grant the motion." Id. at 522. True enough, the Wagner court determined that it could not merely assume that a petitioner's failure to respond to the motion was an admission of its merits. Id. at 553. But the appellate court was also not required to provide a "fine tooth combing" of the record to determine whether "there were indeed no nonfrivolous possible grounds of appeal." Id. Instead, the court settled on a middle ground:

> If the Anders brief is not inadequate or minimal, if it shows that counsel has taken seriously his responsibility to search the record diligently for arguable grounds of appeal and advise the court of them, the court's duty is merely to determine whether counsel is correct in believing those grounds frivolous.

Id. Ultimately, the Wagner court found that the Anders brief was adequate, even if "[a] search of the trial record might turn up additional issues some of which had arguable merit . . . ." Id.

Johnson *is* similarly situated to the petitioner in <u>Wagner</u>, but that works against him. The Seventh Circuit reviewed his trial counsel's <u>Anders</u> brief and determined that it was not inadequate or minimal. Its duty at that point was only to determine whether his trial counsel was correct, and it determined that she was. Whether his trial counsel's <u>Anders</u> brief was facially inadequate was a question for the appellate court—not this one. And the Seventh Circuit determined that it "appears thorough" and accepted it. It should go without saying that this Court cannot review that decision.

The decision by Johnson's trial counsel not to challenge the career-offender classification did not fall below an objective standard of reasonableness. Nothing on the record suggests that his trial counsel lacked oversight or displayed "carelessness, ineptitude, or laziness." <u>Wilson v. Mazzuca</u>, 570 5.3d 490, 502 (2d Cir. 2009). Nor did she exhibit a "lack of desire to uncover the truth." <u>Ramirez v. United States</u>, 799 F.3d 845, 855 (7th Cir. 2015). To the contrary, Johnson's trial counsel sent him several letters describing the career-offender enhancement and how it applied to his case. The last letter—sent to him before sentencing—discussed the enhancement in detail, listed each relevant conviction, and explained why she thought that Johnson would be considered a career offender. His trial counsel then filed a sentencing memorandum to induce the Court to impose a lower sentence despite the enhancement. Taken as a whole, nothing that Johnson's trial counsel did rose to the level of ineffectiveness.

And to the point that Johnson is dissatisfied that his trial counsel did not address the career-offender issue in her <u>Anders</u> brief, bringing the issue to the Seventh Circuit's attention was within his own control. The Seventh Circuit instructed him to respond to the brief and "to present any argument that you believe shows that your conviction is invalid." Even if he could not point to any legal flaws in his trial counsel's <u>Anders</u> brief, he still could have informed the appellate court of his desire to challenge the career-offender classification. His failure to do so did not make his

counsel ineffective. Since his trial counsel's performance did not fall below an objective level of reasonableness, the Court need not address the merits of his career-offender argument to determine whether he suffered prejudice. That said, the Court notes that the Eighth Circuit has repeatedly held that the statute underlying Johnson's two Missouri convictions—Mo. Rev. Stat. § 195.211— is a controlled-substance offense under the Guidelines Manual. E.g., United States v. Thomas, 886 F.3d 1274, 1275, 1277 (8th Cir. 2018); United States v. Reid, 887 F.3d 434, 437 (8th Cir. 2018); United States v. Jackson, 909 F.3d 922, 924–25 (8th Cir. 2018). "[T]he failure to make a meritless argument does not rise to the level of ineffective assistance." United States v. Kirsh, 54 F.3d 1062, 1071 (2d Cir. 1995).

Finally, Johnson argues that his trial counsel should have argued that his two-count indictment violated the Fifth Amendment's Double Jeopardy Clause because both counts were brought under the same statute. (Pet'r's Mem. at 13–14). This argument, however, is plainly wrong. The Double Jeopardy Clause prohibits the Government from prosecuting an individual twice for the *same* offense. U.S. Const. amend. V. But multiple violations of a criminal statute are *different* offenses. Johnson was charged with distributing methamphetamine on two occasions, March 3 and March 20, 2017. (Indictment at 1–2). The Court therefore did not impose separate sentences for the *same* offense, but rather separate sentences for two *different* offenses. Again, "the failure to make a meritless argument does not rise to the level of ineffective assistance." Kirsh, 54 F.3d at 1071.

## IV.   CERTIFICATE OF APPEALABILITY

A § 2255 petitioner may not proceed on appeal without a certificate of appealability. 28 U.S.C. § 2253(c)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." Id. § 2253(c)(2). This requires the

petitioner to "demonstrate that reasonable jurists could debate whether [the] challenge in [the] habeas petition should have been resolved in a different manner or that the issue presented was adequate to deserve encouragement to proceed further." <u>Ouska v. Cahill-Masching</u>, 246 F.3d 1036, 1046 (7th Cir. 2001).

Johnson has not made a substantial showing that he was denied a constitutional right. Reasonable jurists could not debate whether Johnson's Sentencing Guidelines claim was procedurally defaulted or whether his trial counsel was ineffective. The Court therefore declines to issue a certificate of appealability.

## V.    CONCLUSION

Johnson's Motion to Vacate, Set Aside or Correct Sentence is **DENIED**. The Court **DECLINES** to issue a certificate of appealability.

**IT IS SO ORDERED.**

**Dated: Monday, May 11, 2020**

<u>**S/J. Phil Gilbert**</u>
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**

— 11 —